UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK D. WELLER,<br><br>                Plaintiff,<br><br>v.<br><br>LINDE PENSION EXCESS PROGRAM, *et al.*,<br><br>                Defendants. | Civil Action No.: 16-4254 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of the Motion for Summary Judgment filed by Defendants Linde Pension Excess Program ("Program") and Linde North America Inc. ("Linde"), (ECF No. 81), and the Cross-Motion for Summary Judgment filed by Plaintiff Mark D. Weller, (ECF No. 82), both brought pursuant to Federal Rule of Civil Procedure 56. Plaintiff and Defendants each filed a brief in opposition and a reply thereto. (ECF Nos. 87, 88, 92, 93). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed below, the Court grants Defendants' Motion for Summary Judgment to the extent that it seeks judgment on Plaintiff's claim for violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), but denies Defendants' Motion to the extent that it seeks judgment on Plaintiff's remaining claims, and further denies Plaintiff's Cross-Motion in its entirety.

## I. BACKGROUND[1]

### A. The Excess Benefit Program

For approximately thirty years, Plaintiff was employed as an in-house counsel for Defendant Linde and its predecessor companies. (Pl.'s SMF ¶¶ 1–3, 5). Defendant Linde offered participation in a qualified pension plan ("the Linde Pension Plan") as well as Defendant Program for certain highly compensated employees. (Pl.'s SMF ¶¶ 18–19, 23). Defendant Program specifically states that it "is a non-qualified deferred compensation plan" and "is intended to be a plan maintained for a select group of management or highly compensated employees." (ECF No. 82-18 ("Excess Benefit Plan") at 2). Pursuant to the terms of Defendant Program, participation was limited to those employees who: (1) participated in the Linde Pension Plan; and (2) earned an annual salary above the IRS Section 401(a)(17) limitations. (Pl.'s SMF ¶¶ 20, 28–29). There were no other requirements, as an employee did not need to achieve any specified performance criteria or pre-determined goal to participate in Defendant Program. (Pl.'s SMF ¶ 30).

The excess benefit payments were calculated annually and were "equal to the amount of Annual Service Credit and 3% Company Cash Contributions that an employee would have received in [the Linde Pension Plan] on the employee's covered earnings above the annual Section 401(a)(17) limits." (Pl.'s SMF ¶¶ 20, 28; *see also* Excess Benefit Plan). Pursuant to this language, a participant's benefits under Defendant Program cannot be calculated without first determining said participant's annual covered earnings, which is reflected in a report generated by Defendant Linde's Human Resource Information System ("HRIS"). (Pl.'s SMF ¶ 43). The definition of

---

[1] This background is taken from the parties' statements of material facts, pursuant to Local Civil Rule 56.1. (ECF No. 81-2, Defendants' Rule 56.1 Statement of Material Facts ("Defs.' SMF"); ECF No. 83, Plaintiff's Rule 56.1 Statement of Material Facts ("Pl.'s SMF"); ECF No. 87-2, Defendants' Responsive and Supplemental Statement of Material Facts; ECF Nos. 88-1–88-2, Plaintiff's Responsive and Supplemental Statements of Material Facts; ECF No. 93-1, Defendants' Response to Plaintiff's Supplemental Statement of Material Facts). To the extent that Defendants admit to any Material Facts as stated by Plaintiff, the Court will cite only to "Pl.'s SMF" and the relevant paragraph.

covered earnings in Defendant Program is based on the definition of earnings in the Linde Pension Plan, which defines same as:

> the amount received by a Participant from an Employer as base salary or wages, plus bonuses, or other regular remuneration . . . for services as an Eligible Employee but does not include any other remuneration paid to an Employee which his Employer, on a uniform and nondiscriminatory basis applicable to all Employees in similar circumstances, shall determine to be overtime pay, shift differential, premium pay . . . or any other form of additional or special compensation.

(ECF No. 82-16 at 4).

Defendant Program originally provided excess benefit payments to its participants at the time they received their pension payments, *i.e.*, when they left the company, but Defendant Program was amended in or around 2005 so that participants received their excess benefit payments the year after said amounts were earned, *i.e.*, while the participants were still employed. (Pl.'s SMF ¶¶ 20–21). However, those employees who were participating in Defendant Program prior to the 2005 amendment were permitted to receive their excess benefit payments at the same time as their pension payments ("the Grandfathered Participants"). (Pl.'s SMF ¶ 21; Defs.' SMF ¶ 17 n.4). Plaintiff started participating in Defendant Program on January 1, 2008, and received his excess benefit payment the year after said payment was earned. (Pl.'s SMF ¶¶ 25, 27).

**B. The Settlement Agreement**

Though it is contested by Defendants, Plaintiff claims that, in June 2014, an employee of Defendant Linde directed him to engage in conduct that would allegedly violate United States antitrust laws. (Pl.'s SMF ¶¶ 4–5; ECF No. 87-2 ¶ 4). Plaintiff refused to do so and reported the incident to Defendant Linde's internal audit function. (Pl.'s SMF ¶ 5). Shortly thereafter,

3

Defendant Linde allegedly informed Plaintiff that his position would be terminated.[2] (Pl.'s SMF ¶ 5). Plaintiff retained a lawyer and notified Defendant Linde that he intended to file a lawsuit for violation of New Jersey's Conscientious Employee Protection Act. (Pl.'s SMF ¶ 7–8). Before a lawsuit was filed, however, Plaintiff and Defendant Linde entered into mediation and, on June 23, 2015, executed a settlement agreement ("the Settlement Agreement"). (Pl.'s SMF ¶¶ 9–11).

The Settlement Agreement specifically stated that its purpose was "solely to buy peace and to resolve disputed claims and for no other purpose." (ECF 82-12 at 1). Under the Settlement Agreement, Defendant Linde would, among other things, provide Plaintiff with a one-time payment of $1,015,000 ("the Settlement Payment") and issue "an IRS Form W-2 concerning" the Settlement Payment. (*Id.* at 4). In exchange, Plaintiff promised that his employment with Defendant Linde would end on August 31, 2015 and that he would not sue Defendant Linde in relation to the abovementioned dispute. (*Id.* at 1–3). Specifically, Plaintiff agreed to:

> release and discharge [Defendant] Linde, and each of its parents, related or affiliated companies, subsidiary companies, members, directors, officers, shareholders, divisions, branches, agents, employees, assigns, successors, attorneys, insurers, and any person or entity now or previously acting, directly or indirectly, in the interest of or on behalf of said entities in any capacity whatsoever ("Released Parties") from any and all causes of action, claims, demands, costs, and expenses, or damages, whether or not known, claimed, asserted, anticipated, or suspected by [Plaintiff], which he now has, or which have been or could have been asserted or could be asserted by [Plaintiff] or on [Plaintiff's] behalf arising out of any acts, actions, conduct, occurrences, transactions, or omissions, including without limitation the Dispute, [Plaintiff's] employment, and/or the end of his employment with the Released Parties, by the Effective Date of this Agreement.

(*Id.* at 2).

---

[2] Defendants object to this description. Instead, Defendants claim that Plaintiff's position was being consolidated with another position, and that it was Plaintiff who suggested "a parting of the ways." (ECF No. 87-2 ¶ 5). As will be made clear herein, the reasoning behind the end of Plaintiff's employment is not material to the determination of these motions.

Plaintiff also agreed under the Settlement Agreement to release numerous claims against Defendant Linde "based upon any conduct, act, or omission, up to and including the Effective Date of this Agreement." (*Id.*). The "Effective Date" of the Settlement Agreement was defined by said agreement's plain terms as seven days from the date it is executed by the parties. (*Id.* at 8). Considering the Settlement Agreement was signed by Plaintiff and Defendant Linde on or around June 24, 2015, (*id.* at 9), the "Effective Date" of the Settlement Agreement was approximately July 1, 2015.

On August 31, 2015, pursuant to the Settlement Agreement, Plaintiff's employment with Defendant Linde ended. (Pl.'s SMF ¶ 48). On November 6, 2015, Defendant Linde provided Plaintiff with: (1) the Settlement Payment, which was directly deposited to Plaintiff's personal bank account; and (2) an earnings statement identifying the Settlement Payment as "Earnings" and including the Settlement Payment in Plaintiff's "Gross Earnings." (Pl.'s SMF ¶¶ 12–14). Defendant Linde's internal remuneration statement also included the Settlement Payment in its accounting of Plaintiff's 2015 "Gross Earnings." (Pl.'s SMF ¶ 15). Additionally, the 2015 W-2 and Earnings Summary issued by Defendant Linde listed the Settlement Payment as "wages." (Pl.'s SMF ¶ 16; *see also* ECF No. 82-15).

## C. Conduct Underlying this Action

Though the parties contest whether or not it was properly performed, the Settlement Payment was excluded from the HRIS report of Plaintiff's annual earnings, which was used by Defendant Program to calculate Plaintiff's 2015 excess benefit payment. (Pl.'s SMF ¶¶ 44–46; ECF No. 87-2 ¶¶ 44–45). Because the Settlement Payment was not included in Defendant Program's calculation, Defendant Program provided Plaintiff with an excess benefit payment in the amount of $18,960.69. (Pl.'s SMF ¶¶ 51–54). Plaintiff claims that he would have received an

excess benefit payment of $131,145.42 from Defendant Program had the Settlement Payment been included in the benefits calculation. (Pl.'s SMF ¶¶ 55–56).

In February 2016, upon discovering this supposed discrepancy, Plaintiff contacted Defendants and requested that they "pay him the full amount of benefits due in accordance with the terms of the Program." (Pl.'s SMF ¶ 57). Though it is contested whether or not Defendants reviewed the Settlement Agreement, it is uncontested that Defendants found that the Settlement Payment was not "earnings" under Defendant Program and denied Plaintiff's request. (Pl.'s SMF ¶¶ 58–59; ECF No. 87-2 ¶¶ 58–59). Defendants told Plaintiff that he can appeal their finding "in accordance with Article 12 of the Linde Pension Plan." (Pl.'s SMF ¶ 62). However, Plaintiff points out that Article 12 of the Linde Pension Plan does not provide any kind of appeals process such as the one stated by Defendants. (Pl.'s SMF ¶ 63).

**D. Procedural History**

Accordingly, on July 13, 2016, Plaintiff initiated this action to recover the remaining amount of excess benefit payments had the Settlement Payment been included as earnings in Defendant Program's calculations, which Plaintiff claims would be equal to $112,184.73, in addition to attorney fees and other costs under ERISA. (Pl.'s SMF ¶ 64; *see also* ECF No. 1; ECF No. 12 ("FAC")). Specifically, Plaintiff's Amended Complaint asserts the following causes of action against Defendants: (1) failure to make benefit payments in violation of ERISA ("Count One"); (2) breach of contract ("Count Two"); and (3) breach of the covenant of good faith and fair dealing ("Count Three").[3] (FAC ¶¶ 34–55). Defendants now move for summary judgment and Plaintiff cross-moves for same.

---

[3] At the motion to dismiss stage, the Court found that the determination of whether or not ERISA applied to this case should be left for the summary judgment stage, (ECF No. 27 at 10), an issue which the Court necessarily resolves in its analysis herein.

## II. LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists "no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## III. ANALYSIS

The determination of the parties' motions turns on the answers to three questions: (1) did Plaintiff disclaim his causes of action in this case by entering into the Settlement Agreement?; (2) does Defendant Program qualify as an ERISA benefit program so that this case is governed by ERISA?; and (3) regardless of whether Defendant Program qualifies as an ERISA benefit program or a unilateral contract, does the Settlement Payment qualify as "earnings" under Defendant Program? The Court addresses each of these questions in turn and concludes that, though this case is not barred by the Settlement Agreement nor is it governed by ERISA, there is a material dispute

of fact as to whether or not the Settlement Payment qualifies as "earnings" under Defendant Program.

**A. The Settlement Agreement's Disclaimer**

Defendants first argue that Plaintiff waived his current causes of action by entering into the Settlement Agreement. (ECF No. 81-1 at 4–6). Pursuant to the Settlement Agreement, Plaintiff agreed in part to "release and discharge" Defendant Linde from any claims, whether known or suspected, "which [Plaintiff] now has, or which have been or could have been asserted or could be asserted by [Plaintiff] . . . arising out of . . . the Dispute, [Plaintiff's] employment, and/or the end of his employment with [Defendant Linde], by the Effective Date of this Agreement." (ECF 82-12 at 2). Plaintiff further disclaimed several specific causes of action, including any cause of action under ERISA, that occurred "prior to the Effective Date of this Agreement." (*Id.*). The clear meaning of this language is that Plaintiff disclaimed any causes of action that existed as of the time of the Effective Date of the Agreement, which was on or about July 1, 2015 as stated above.

Upon analyzing this clear and unambiguous language, the Court finds that Plaintiff did not waive his current claims. As Plaintiff correctly points out, a cause of action for a denial of benefits under ERISA accrues at the time said benefits are denied. *See Romero v. Allstate Corp.*, 404 F.3d 212, 221 (3d Cir. 2005). Similarly, if this case is instead governed by contract law, then said claim accrued at the time of the supposed breach. *See Windsor Card Shops, Inc. v. Hallmark Cards, Inc.*, 957 F. Supp. 562, 566 (D.N.J. 1997); *see also Nix v. Option One Mortg. Corp.*, No. 05-3685, 2006 WL 166451, at *10 (D.N.J. Jan. 19, 2006) ("a breach of contract claim generally accrues at the time of the alleged breach"). Here, the conduct underlying Plaintiff's causes of action occurred on or around February 2016, when Plaintiff received his benefit payment and Defendants denied Plaintiff's request for the additional benefit payment. Considering Plaintiff's causes of action for

unpaid benefits did not accrue until after July 1, 2015, *i.e.*, the approximate Effective Date of the Settlement Agreement, and considering a plain reading of the Settlement Agreement shows that Plaintiff only disclaimed those causes of action that, whether known or unknown, had occurred by the Effective Date of the Settlement Agreement, the Court concludes that Plaintiff did not disclaim his current causes of action under the Settlement Agreement.

**B. The Application of ERISA**

In order for Defendant Program to qualify as a pension benefit plan governed by ERISA it must, "by its express terms or as a result of surrounding circumstances," either: (1) "provide[] retirement income to employees"; or (2) "result[] in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A). "The words 'provides retirement income' patently refer only to plans designed for the purpose of paying retirement income whether as a result of their express terms or surrounding circumstances." *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 575 (5th Cir. 1980); *see also Oatway v. Am. Int'l Grp., Inc.*, 325 F.3d 184, 189 (3d Cir. 2003) (affirming a district court decision that determined the application of ERISA under the *Murphy* analysis).

Here, Defendant Program does not qualify as a pension benefit plan under the first prong articulated above, because Defendant Program's express purpose is not to provide retirement benefits but rather to avoid certain tax liabilities by deferring income until the following year for currently working highly compensated employees. (Excess Benefit Plan at 2). Plaintiff seems to concede this point as he does not raise any arguments regarding the first prong. (*See generally* ECF Nos. 82-3, 88, 92).

Instead, Plaintiff argues that Defendant Program qualified under the second prong because: (1) a participant's income and benefits under the plan was deferred until the following year, which

9

could extend until after retirement; and (2) certain participants had the option to defer their excess benefit payments until their retirement or the end of their employment. (ECF No. 88 at 9–12). To support these arguments, Plaintiff relies on a Fifth Circuit case where employees participated in a deferred compensation plan which had similar language to Defendant Program and allowed participants to elect whether their benefit payments would be distributed during their employment or after their separation from the company. *See Tolbert v. RBC Capital Mkts. Corp.*, 758 F.3d 619, 622 (5th Cir. 2014). In *Tolbert*, the Fifth Circuit concluded that the benefit plan was governed by ERISA because, pursuant to the plan's plain terms, it deferred income to a later date and provided for certain amounts that would only fully vest upon the participant's separation from the employer. *Id.* at 758 F.3d at 625–26

While the Court agrees that Defendant Program deferred its participant's income, the Court cannot conclude that said deferral extended until the end of covered employment or beyond. Contrary to the position taken by Plaintiff, "the mere fact that some payments under a plan may be made after an employee has retired or has left the company does not result in ERISA coverage by statutory definition" under the second prong. *Oatway*, 325 F.3d at 188 (citing *Murphy*, 611 F.2d at 576).

Furthermore, Defendant Program is not comparable to the plan considered in *Tolbert*, 758 F.3d at 626, as Defendant Program did not: (1) permit its participants to choose at the outset to defer income until retirement; and (2) provide any amount of benefits that would only fully vest after the end of a participant's employment. (*See generally* Excess Benefit Plan). Though it is true that the Grandfathered Participants had the option to defer their benefit payments until retirement similar to the previous version of Defendant Program, that option was not available to Plaintiff, who was not one of the Grandfathered Participants and who did not participate in

Defendant Program until 2008, *i.e.*, after Defendant Program was amended. (Pl.'s SMF ¶¶ 21, 25, 27). Indeed, as required by Defendant Program's plain terms, Plaintiff received his fully vested excess benefit payments on an annual basis while he was still employed. (Pl.'s SMF ¶ 27). To conclude that this type of plan deferred its participant's income until the end of employment or beyond would require this Court to impermissibly read ERISA's terms "as an elastic girdle that can be stretched to cover any content that can conceivably fit within its reach." *Tolbert*, 758 F.3d at 623–24 (quoting *Murphy*, 611 F.2d at 575). Therefore, the Court finds that Defendant Program does not qualify as an ERISA governed pension benefit plan under either of the prongs articulated above. Accordingly, this case is not governed by ERISA and judgment must be entered in favor of Defendants in regard to Count One.

## C. The Definition of "Earnings"

The Court's analysis does not conclude simply because ERISA does not govern this case. Rather, as Plaintiff correctly points out, a benefit plan such as Defendant Program may amount to a unilateral contract. *Kemmerer v. ICI Ams. Inc.*, 70 F.3d 281, 287 (3d Cir. 1995) ("A pension plan is a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years.") (citations omitted). "Under unilateral contract principles, once the employee performs, the offer becomes irrevocable, the contract is completed, and the employer is required to comply with its side of the bargain." *Id.* Neither party's interpretation of a unilateral contract is given deference over the other party's interpretation. *Goldstein v. Johnson & Johnson*, 251 F.3d 433, 443 (3d Cir. 2001). Here, Defendants argue that, assuming Defendant Program could amount to a unilateral contract, judgment must nevertheless be entered in their favor because there was no breach of the unilateral contract. (ECF No. 81-1 at 17–18). Specifically, Defendants claim that there was no breach of

Defendant Program because the Settlement Payment was not "earnings" that needed to be included in Defendant Program's calculations. (*Id.*).

The Court finds that a material dispute of fact exists as to whether or not the Settlement Payment was intended by the parties to the Settlement Agreement to be "earnings" as contemplated by Defendant Program. On the one hand, Defendants argue that the Settlement Payment was not "earnings" under Defendant Program because it was not given to Plaintiff for work performed, but rather it was given, as stated in the Settlement Agreement, "to buy peace" and prevent litigation. (*Id.* at 10–17). To support this argument, Defendants point out that the definition of "covered earnings" in Defendant Program was provided in the Linde Pension Plan and defined as "base salary or wages, plus bonuses, or other regular remuneration . . . for services as an Eligible Employee." (ECF No. 82-16 at 4). This definition did not encompass "any other remuneration paid to an Employee which his Employer, on a uniform and nondiscriminatory basis applicable to all Employees in similar circumstances, shall determine to be overtime pay, shift differential, premium pay . . . or any other form of additional or special compensation." (*Id.*).

On the other hand, Plaintiff argues that the parties to the Settlement Agreement intended for the Settlement Payment to be designated as "wages," which is included in the Linde Pension Plan and Defendant Program's definition of "earnings." (ECF No. 88 at 21–23). To support his argument, Plaintiff points to the surrounding circumstances of the Settlement Agreement and the Settlement Payment. For example, Plaintiff points to the undisputed fact that Defendant Linde issued an earnings statement along with the Settlement Payment, which listed the Settlement Payment as "earnings." (Pl.'s SMF ¶¶ 12–14; ECF No. 82-13). Plaintiff also notes that Defendant Linde completed a remuneration statement that included the Settlement Payment in Plaintiff's gross earnings for 2015. (Pl.'s SMF ¶ 15; ECF No. 82-14). Finally, pursuant to the Settlement

12

Agreement's express terms, Defendant Linde included the Settlement Payment in a W-2 form, which designated the Settlement Payment as "wages." (ECF No. 82-15).

Contrary to Defendants' argument, a settlement payment can be construed as earnings depending on the terms of the settlement agreement and the context of the underlying dispute. *See Eckersley v. WGAL TV, Inc.*, 831 F.2d 1204, 1209–10 (3d Cir. 1987) (determining that a settlement payment was "earnings" based on the plain terms and context of the settlement agreement). Because both Plaintiff and Defendants have set forth plausible interpretations as to whether or not the Settlement Payment was included as "earnings" under Defendant Program, which are each supported by facts and evidence in the record, and because a determination of whether or not the Settlement Payment qualified as earnings under Defendant Program is material to Plaintiff's breach of contract claim, it would be inappropriate for the Court to find in favor of either side at this stage. Rather, in light of the record described above, the facts surrounding the Settlement Agreement's terms and the supposed intention of the parties to the Settlement Agreement to designate the Settlement Payment as "wages" for purposes of Defendant Program's excess benefit payments calculation, or lack thereof, should be left for a determination by the finder of facts.

Furthermore, because the Court finds a material dispute of fact related to Plaintiff's claim for breach of contract, it would be premature to find for either party with regard to Plaintiff's claim for breach of the covenant of good faith and fair dealing at this time. *See Coleman v. Deutsche Bank Nat'l Tr. Co.*, No. 15-1080, 2015 WL 2226022, at *5 (D.N.J. May 12, 2015) (stating that a claim for breach of the covenant of good faith and fair dealing requires that "a contract exist between plaintiff and defendant.") (citation omitted). Accordingly, both Defendants' Motion and Plaintiff's Cross-Motion are denied to the extent that they seek judgment on Counts Two and Three of Plaintiff's Complaint.

## IV. CONCLUSION

For the reasons expressed above, Defendants' Motion seeking judgment on Count One is hereby granted, but Defendants' Motion seeking judgment on Counts Two and Three and Plaintiff's Cross-Motion are hereby denied.

Dated: April 24, 2019.

JOSE L. LINARES
Chief Judge, United States District Court